## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Phenicia Cordalla Williams,** : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> **Equifax Information Services, LLC,** : <br> **Experian Information Solutions, Inc.,** : <br> **Trans Union, LLC, and Consumer** : <br> **Portfolio Services, Inc.,** : <br> : <br> Defendants. : <br> : | **Civil Action No.** |

## COMPLAINT

### Preliminary Statement

1. This is an action for damages brought by an individual consumer against the Defendants (named below) for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (the "FCRA").

### Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, and 28 U.S.C. §1331, 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

### Parties

4. Plaintiff Phenicia Cordalla Williams ("Ms. Willaims" or "Plaintiff") is an adult individual who resides in Decatur, GA.

5. Defendant Experian Information Solutions, Inc ("Experian") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts

business in the Eastern District of Pennsylvania, with principal place of business located at 701 Experian Pkwy, Allen, TX 75013.

6. Defendant Trans Union, LLC ("Trans Union") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1510 Chester Pike, Crum Lynne, PA 19022.

7. Defendant Equifax Information Services, LLC ("Equifax") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. At times Experian, Trans Union and Equifax are collectively referred to as the "Credit Reporting Agency Defendants" or the "CRA Defendants".

8. Defendant Consumer Portfolio Services, Inc., ("CPS") is a business entity that is registered to do business in the Commonwealth of Pennsylvania and regularly conducts business in the Eastern District of Pennsylvania, with a principal place of business located at P.O. Box 57071, Irvine, CA 92619.

9. CPS is a "furnisher" as defined in 12 CFR 1022.41 as it regularly provides information relating to consumers to one or more Consumer Reporting Agencies ("CRAs") for inclusion in a consumer report.

## Facts

### Purpose of the FCRA

10. Understanding the dire consequences of inaccurate credit reporting, Congress enacted the FCRA. One of the primary purposes of the FCRA is to require CRAs to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking

system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

11. The preservation of one's good name and reputation is also a foundational principle of the FCRA:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)].

12. Thus, in order to further its objectives, embedded within the FCRA is the requirement that CRAs conduct a reasonable investigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted.

13. Further underscoring the importance of accurate credit reporting, the FCRA also

requires furnishers of information - a creditor or other third party that provides information about consumer to a CRA - upon notice, to conduct a reasonable investigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14. Here, despite Ms. Williams' numerous disputes, none of the Defendants conducted reasonable investigations of the inaccurate reporting of Plaintiff's credit information, and continued to include derogatory inaccurate information within her credit reports.

## Facts

### Background

15. CPS is a specialty finance company that provides automobile financing to consumers.

16. On or about October 12, 2024, Ms. Williams financed the purchase of an automobile through CPS.

17. In 2025, Ms. Williams refinanced her CPS auto loan through Navy Federal Credit Union ("NFCU").

18. On or about September 19, 2025, NFCU sent a check paying off the remaining balance owed to CPS (the "Payoff Check").

19. On October 6, 2025, according to NFCU and CPS's own documents, CPS received and processed the Payoff Check from NFCU.

20. Additionally, Ms. Williams received a letter dated October 20, 2025, from CPS confirming that the account "…is now paid in full" (the "Paid in Full Letter").

21. Despite the CPS account being paid in full and closed, Ms. Willams' CPS account

was reported with inaccurate information including a past due amount (all CRA defendants), late payment information for October 2025 (only Experian), and an outstanding balance of approximately $15,607 (all CRA defendants).

22. The reporting of this derogatory credit information is not accurate.

23. Ms. Williams disputed the reporting of the inaccurate information with Trans Union, Equifax and Experian which included an explanation as to why the information was inaccurate, false and misleading. With her disputes, Ms. Williams included supporting documentation including, but not limited to, the Payoff Check and Paid in Full Letter.

24. In her disputes, Ms. Williams also requested that the Defendants report the fact that the CPS account was disputed.

25. Nevertheless, the Defendants refused to correct the inaccuracies, and continued to report the inaccurate, false and misleading information relating to Ms. Willams' CPS account and failed to note that the CPS account was disputed.

26. Despite Ms. Williams's efforts, her credit reports with Experian, Trans Union and Equifax have not been corrected.

### Ms. Williams' Disputes with Equifax

27. On or about October 19, 2025, Ms. Wiliams disputed the inaccurate reporting with Equifax. The dispute included a detailed explanation as to why the information being reported was inaccurate, false and misleading. The dispute also included the Payoff Check, Paid in Full Letter, a screenshot of her Equifax credit report that included the CPS account, and a copy of her Consumer Financial Protection Bureau ("CFPB") complaint.

28. Pursuant to the obligations under the FCRA, Equifax was supposed to provide the dispute and supporting documentation to CPS to investigate.

29.     By correspondence dated October 26, 2025, Equifax responded by claiming that the inaccurately reported CPS account was verified as accurate and the inaccurate credit reporting continued. Additionally, Equifax and CPS failed to include any information reflecting that CPS account was disputed.

30.     Ms. Williams takes significant pride in her credit, and was distraught, confused and upset by the failure of Equifax to remove the inaccurate credit information included within her credit report despite the documentation she submitted.

### Ms. Williams' Dispute with Experian

31.     On or about October 19, 2025, Ms. Williams disputed the inaccurate reporting with Experian. The dispute included detailed explanations as to why the information being reported was inaccurate, false and misleading. The dispute also included, among other things, the Payoff Check, the Paid in Full Letter, and a screenshot of her CPS account from her Experian credit report.

32.     Pursuant to the obligations under the FCRA, Experian was supposed to provide the dispute to CPS to investigate.

33.     By correspondence dated October 23, 2025, Experian responded by claiming that the inaccurately reported CPS account was verified as accurate and the inaccurate credit reporting continued. Additionally, Experian and CPS failed to include any information reflecting that CPS account was disputed.

34.     Ms. Williams takes significant pride in her credit, and was distraught, confused and upset by the failure of Experian to remove the inaccurate credit information included within her credit report despite the documentation she submitted.

### Ms. Williams' Dispute with Trans Union

35.     On or about October 19, 2025, Ms. Williams disputed the inaccurate reporting with

Trans Union. The dispute included detailed explanations as to why the information being reported was inaccurate, false and misleading. The dispute also included the Payoff Check, the Paid in Full Letter, CPS Loan Summary and CFPB Confirmation reference.

36.     Pursuant to the obligations under the FCRA, Trans Union was supposed to provide the dispute to CPS to investigate.

37.     By correspondence dated October 25, 2025, Trans Union responded by claiming that the inaccurately reported CPS account was verified as accurate and the inaccurate credit reporting continued. Additionally, Trans Union and CPS failed to include any information reflecting that CPS account was disputed.

38.     Ms. Williams takes significant pride in her credit, and was distraught, confused and upset by the failure of Trans Union to remove the inaccurate credit information included within her credit report despite the documentation she submitted.

**Defendants' Failure to Conduct Reasonable Investigations**

39.     Ms. Williams' disputes triggered obligations under the FCRA for the CRA Defendants (Section 1681i(a)) and CPS (Section 1681s-2(b)) to conduct reasonable investigations.

40.     This dual investigative requirement further illustrates and reinforces Congress' findings of the importance of accurate consumer credit reporting. Unfortunately, however, when conducting an 'investigation' CRAs and furnishers choose speed over accuracy.

41.     Furnishers merely review information in their limited credit reporting databases, to determine if the disputed information is accurate. CRAs then simply accept as true whatever representation is made by the furnisher without questioning any of the results or conducting a true independent investigation. Furnishers and CRAs often simply ignore documentation provided to them by consumers that are intended to assist in resolving a disputed inaccuracy.

42. In other words, no true investigation is performed by CRAs or furnishers other than a perfunctory data match of information. See e.g., Robertson v. J.C. Penney Co., 2008 WL 623397, at *8 (S.D. Miss. Mar. 4, 2008) ("There appears to have been no investigation of the disputed status of the claim at all"); Scharf v. Trans Union, LLC, 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015), reconsideration denied, 2015 WL 7016331 (E.D. Mich. Nov. 12, 2015) (granting summary judgment to identity theft victim where the furnisher merely reviewed its file to determine whether the loan was in default); Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1303 (11th Cir. 2019) ("…Defendant made no correction nor any effort to insure that the pertinent databases revealed the existence of the settlement and the fact that no debt was owed by Plaintiffs. Meaning that when Plaintiffs took the predictable next step of disputing this debt with the credit reporting agencies, the outcome of the investigation by Defendant's employee was also quite predictable: the employee would incorrectly verify the existence of a continuing debt.")

43. Unfortunately, this situation is no different.

44. Ms. Willaims provided with her disputes all of the information and documentation necessary to confirm that the account was paid in full and that the reports should reflect no past due amount, no late payment information for October 2025 (for Experian only), or an outstanding balance of approximately $15,607. Any reasonable inquiry into this matter would have further confirmed that the reporting of the credit information was not accurate.

45. If any reasonable investigation were conducted, and the materials submitted by Ms. Willaims were read, the CPS account should have been corrected.

46. The Defendants either did not engage in any investigation when they were informed of the inaccurate reporting, or (alternatively) did not engage in a reasonable investigation, as such an investigation would have revealed the inaccurate information, which, at minimum, was

misleading since Ms. Williams provided documentation directly from CPS confirming that her account was paid in full and closed.

47. The Defendants failed to institute or adhere to policies and procedures that could have prevented the reporting of the inaccurate information.

48. The Defendants knew or should have known that their actions violated the FCRA. Additionally, Defendants could have taken the steps necessary to bring their agents' actions within compliance of the statutes but neglected to do so and failed to adequately review those actions to ensure compliance with said laws.

49. Plaintiff's credit reports and file have been obtained from the CRA Defendants and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information has been a substantial factor in precluding Plaintiff from receiving credit offers and opportunities, known and unknown.

50. As a result of the Defendants' violations of the law, Ms. Williams suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, fear, worry, anxiety, and embarrassment attendant to her disputes and disbelief by Defendants of her assertions.

### Count One – Violations of the FCRA
### Plaintiff v. Experian, Trans Union and Equifax

51. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52. At all times pertinent hereto, Experian, Trans Union and Equifax were each a "person" and a "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

53. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

54. At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

55. The CRA Defendants have violated numerous provisions of the FCRA for their improper actions, including but not limited to Sections 1681e(b) and 1681i(a) of the FCRA. Defendants willfully and negligently violated the FCRA and are liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

56. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the actual damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

### Count Two – Violations of the FCRA
### Plaintiff v. CPS

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. At all times pertinent hereto, CPS was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

59. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

60. CPS violated Section 1681s-2(b) of the FCRA by engaging in the following conduct:

   a. willfully and negligently failing to conduct a reasonable investigation of

       the inaccurate information that Plaintiff disputed;

b. willfully and negligently failing to review all relevant information concerning Plaintiff's inaccurately reported trade line;

c. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d. willfully and negligently failing to report the accurate status of the inaccurate information to all credit reporting agencies;

e. willfully and negligently continuing to furnish and disseminate inaccurate, unlawful and derogatory credit account and other information concerning Plaintiff to credit reporting agencies and other entities; and

f. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. §1681s-2(b)

61. The Defendant has violated numerous provisions of the FCRA for its improper actions, including but not limited to Section 1681s-2(b) of the FCRA. Defendant willfully and negligently violated the FCRA and is liable for damages to Plaintiff pursuant to Section 1681n and 1681o of the FCRA.

62. The conduct of CPS was a direct and proximate cause, as well as a substantial factor in bringing about the serious injuries, actual damages and harm to Plaintiff that are outlined more fully above. As a result, Defendant is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against

the Defendants, based on the following requested relief:

      a. Actual damages;

      b. Statutory damages;

      c. Punitive damages;

      d. Costs and reasonable attorneys' fees; and

      e. Such other relief as may be necessary, just and proper.

**THE KIM LAW FIRM, LLC**

BY: */s/ Richard H. Kim*
Richard Kim, Esquire
1515 Market St., Suite 1200
Philadelphia, PA 19102
Ph. 855-996-6342/Fax 855-235-5855
rkim@thekimlawfirmllc.com

*Attorney for Plaintiff Phenicia Cordalla Williams*

Date: December 15, 2025